Matthew M. Levy, J.
This is a motion by a trade union to stay a proposed arbitration which an employer seeks to bring pursuant to a collective bargaining agreement between the parties.
The agreement provided that in the event new workers were needed by the employer, it would apply therefor to an employment office to be operated by the union, the facilities of which employment office would be “made available to all persons regardless of whether they are members of the union or not.” It provided further that the employer had the right to hire such new workers that it might need from any other employment office or source should the union’s employment office fail to *602 supply workers satisfactory to the employer, that “ The employer retains the right to discharge for just cause ”, and that “nothing herein contained shall be construed to impair, impede or interfere with the exercise of the Employer’s management functions.”
Pursuant to a job request submitted by the employer in October, 1950, the union sent three applicants for the positions. After opportunity for inquiry by the employer, two of the three were chosen by the employer and hired, and the third applicant was rejected. Several days later one of the new employees was seriously injured, as a result of an industrial accident during the course of his employment. Subsequently proceedings were had under the Workmen’s Compensation Law, and the employer was found to have hired the employee in violation of the Labor Law in that the employee was 17 years old at the time of the accident, whereas the Labor Law (§ 131) provides a minimum age of 18 years in this type of employment. The collective bargaining agreement also provided that “It is understood that no minor under the age of eighteen (18) years shall be employed by the Employer.” Thereafter and in February, 1954, final award was made by the Workmen’s Compensation Board, which determined that the employee was entitled to a double award, the employer’s insurance carrier being charged with a single award, and the employer itself being directed to pay a single award as well, pursuant to the provisions of section 14-a of the Workmen’s Compensation Law.
The matter was taken up by the employer with the union, the employer demanding recompense. The union refused to concede liability. In pursuance of the arbitration clause contained in the collective bargaining agreement, the employer by letter dated March 15, 1954, notified the union that unless it heard from the union within 24 hours, in order to select an arbitrator by mutual agreement, it would request arbitration of the matter through the auspices of the American Arbitration Association. On March 19, 1954, request was made (by the employer) to the association with regard to the proceeding, and, by letter dated March 24, 1954, the employer was informed by the association that it declined jurisdiction in the matter. On March 26,1954, the employer communicated with the New York State Board of Mediation, outlining its grievance, asking for arbitration, and sending a copy of the letter to the union. The board indicated that it would proceed with arbitration proceedings. The union seeks to stay that arbitration.
The applicable clauses with reference to arbitration embodied in the agreement here involved must now be studied. They are *603 contained in section 15, entitled ‘ ‘ Adjustments of Disputes ’ ’ and read as follows:
“ (a) Adjustment of all complaints, controversies, disputes, and grievances arising between the Employer and the "Union concerning the interpretation, operation, application or performance of the terms of this agreement, or any complaint, controversy, dispute or grievance involving a claimed breach of any of the terms or conditions of this agreement, shall be undertaken in accordance with the following procedure: The matter shall first be taken up by representatives of the Employer and the Steward; if such dispute cannot be so adjusted by these persons, the matter shall be taken up by representatives of the Employer and the Union, and, if no adjustment can be arrived at, the dispute shall be submitted to an Arbitrator within twenty-four (24) hours after written notice has been given by either side to the other of the inability to adjust, such written notice, as well as any other notice provided for in this agreement, shall be given to the Union at its headquarters, 13 Astor Place, New York City, and to the Employer at his place of business.
“ (b) The Arbitrator, as hereinabove mentioned shall be selected by both sides by mutual agreement. In the event both sides fail to mutually agree on an arbitrator within twenty-four (24) hours, either party may ask the State Board of Mediation, or the American Arbitration Association to appoint an Arbitrator and such appointee shall be the Arbitrator in the matter involved. The decision of the Arbitrator shall be final and binding upon both parties and shall be fully enforceable. It is understood that the Arbitrator shall not have power to amend, modify, alter or subtract from this agreement or any provision thereof.
“(c) It is agreed that time is of the essence in any arbitration, and both parties will exert their best efforts to obtain a speedy decision.
“(d) The arbitration procedure herein set forth is the sole and exclusive remedy of the parties hereto and the workers covered hereby, for any claimed violation of this contract, and for any and all acts or omissions claimed to have been committed by either party during the term of this agreement, and such arbitration procedure shall be (except to enforce, vacate or modify awards) in lieu of any and all other remedies, forums at law, in equity or otherwise which will or may be available to either of the parties. The waiver of all other remedies and forums herein set forth, shall apply to the parties hereto, and to all of the workers covered by this contract. No individual worker may initiate an arbitration proceeding.”
*604 The first reason advanced by the union for a stay of arbitration is that the employer’s demand for arbitration was not timely because, by the terms of the contract itself, the time limitations governing the institution of arbitration proceedings were of the essence. In my opinion, this objection is untenable under the circumstances of this case. It would seem quite obvious that the preliminary steps of adjustment procedure here provided for are inappropriate or impossible in a situation of this kind. In fact, the arbitration machinery was not, and perhaps should not have been, fully invoked in this situation — for it does not appear that the shop steward could possibly have any interest or duty in the matter. It may be, therefore, that, in the light of the language used in this clause, the indicated need of speed is not present in a dispute of this kind, but, rather, in those situations involving the interests of employees directly as they affect their working conditions.
While it is generally true that, where the parties provide in their agreement for a time limit in which to seek arbitration, this clause is binding on them (Lewis v. Volmer H. Houlberg, Inc., 220 App. Div. 762), nevertheless, under the circumstances of the case and upon a proper showing, the agreement in that regard may be so ambiguous or so unreasonably harsh as to be unenforcible (Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36, 41). The agreement under discussion provides that disputes be submitted to an arbitrator within 24 hours after written notice has been given by either side to the other of the inability to adjust, that the arbitrator shall be selected by mutual consent, and if both sides fail to agree on an arbitrator within 24 hours, either side may ask the State Board of Mediation or the American Arbitration Association to appoint an arbitrator. It is not clear, from a reading of the time-limitation clause, when the written notice is considered given. Is it when it is mailed or when it is received? A further ambiguity appears from a reading of the requirement that the parties have 24 hours to agree upon an arbitrator. Does this 24-hour period run from the expiration of the 24-hour period when notice to arbitrate is given, or does it run concurrently with it? In any event, I am of the view that under the circumstances of this case, the strict limitation of 24 hours is unreasonably harsh and, in my opinion, unenforcible.
It seems to me that the employer here acted as expeditiously as possible. It was on March 15, 1954 that it mailed a letter to the union, stating that unless it heard from the union within 24 hours in order to select an arbitrator, it would request arbitration of the matter. The letter might not have been received by *605 the union for a day or so — then the employer (properly waiting the required time for the union to agree on an arbitrator) immediately thereafter, on March 19, 1954, invoked the arbitration procedure. Accordingly, the arbitration should not be stayed on the ground that the employer’s demand was not timely.
The issue in this case cuts deeper. On the merits, is this a matter for arbitration under the terms of the collective bargaining agreement between the parties ? In its language, the arbitration provision seems to be quite broad. Yet if it does not embrace this specific type of dispute, the petitioner may not be required to arbitrate, for there is no duty to arbitrate unless by clear language the parties have so agreed (Matter of Lehman v. Ostrovsky, 264 N. Y. 130, 132), and if the dispute is not one which the agreement requires to be arbitrated, the court will not order an arbitration to proceed (Matter of Belding Heminway Co. [Wholesale & Warehouse Workers’ Union], 295 N. Y. 541).
While the ascertainment of the meaning of a contract may be a matter for the arbitrator (Matter of Nadalen Full Fashion Knitting Mills [Barbizon Knitwear Corp.], 206 Misc. 757), the assertion of an interpretation which is clearly contrary to the plain meaning of the language used in that contract cannot create an arbitrable issue. If the meaning of the provisions in the contract is beyond dispute, there is nothing to arbitrate and the contract cannot be said to provide for arbitration (Matter of International Assn. of Machinists [Cutler-Hammer, Inc.], 271 App. Div. 917, affd. 297 N. Y. 519). The burden of showing the existence of an arbitrable issue or dispute is upon the party seeking arbitration. (See Matter of Essenson [Upper Queens Med. Group], 307 N. Y. 68.) If, under the unambiguous terms of the agreement, there is no real ground of claim, the court may refuse to allow arbitration, although a claimed dispute may come within the literal language of the arbitration agreement (Matter of General Elec. Co. [United Elec. Radio & Mach. Workers], 300 N. Y. 262, 264).
The broad arbitration clause used in the case at bar would seem to make the alleged dispute fall within its literal language. However, a close examination of the agreement indicates that there is no real ground of claim, and for that reason the proposed arbitration must be stayed. In essence, this dispute relates solely to the claim (in contract or in tort) that the union was guilty of an act which gave rise to damage. The unambiguous language of the agreement states that no minor under the age of 18 shall be employed by the employer. Nowhere in such agreement is there any duty placed upon the union to inves *606 tigate into the qualifications of prospective employees dispatched by it to the employer. Under the terms of the agreement, the employer was given the right to secure any needed employees from any employment office other than the union’s or from any other source desired. There can be no doubt under the terms of this contract that the hiring of employees was under the exclusive control of the employer and that it had full opportunity to examine the employees’ qualifications, and reject anyone not satisfactory to it. Since there was no duty placed on the petitioner (but very expressly upon the respondent), there was no breach.
It follows that the motion must be granted, inasmuch as there is no arbitrable issue. Order signed.
(Motion for reargument, January 28,1955.)
In the opinion which I wrote disposing of the motion, the statement appears that the agreement between the parties provided that the employer could hire new workers should the union’s employment office fail to supply workers satisfactory to the employer. In support of a request for permission to reargue, the respondent employer urges inaccuracy in that regard, and points out that paragraph 3 (c) of the agreement provides that ‘1 If such employment office fails to supply workers satisfactory in the performance of their duties to the Employer within one (1) weeks time after such request was made [to the Union employment office for new workers], the Employer may engage s.uch new workers from any other employment office or source.” Emphasis is placed upon the words I have placed in italics.
It cannot be reasonably contended, in my view, that this provision means that the employer must first employ persons sent to it by the union, and that those persons must first actually begin work before the employer may determine whether or not they will be ‘ ‘ satisfactory in the performance of their duties to the Employer.” The parties themselves have throughout the years concededly construed the clause otherwise, in the light too of the other provisions contained in the contract and adverted to in my former opinion. It appears that during 1950 the employer made request to the union for 14 new workers, and that to fill these requests 43 prospective employees were sent to the employer, which exercised full authority of selection and hiring. As a specific example of this practice, I need but refer to the fact that on November 27, 1950, at least five applicants were sent by the union employment office to fill one job request made by the employer. Again, on October 31,1950, in reference to the matter giving rise to the instant controversy, the union *607 employment office sent to the employer three prospective employees in response to a request for a single television installation man, giving the employer the opportunity and right to hire any or none of the workers thus dispatched; and in fact the employer selected two of them. Approximately the same or a greater proportion of job applicants was sent to fill each job request forwarded to the union employment office by the employer during the life of the collective bargaining relationship between the parties. On each occasion the employer had and exercised full authority to select the persons that it desired to hire.
Accordingly, the parties themselves have interpreted the agreement to mean that the employer had the right in its sole discretion to hire only those workers dispatched to it whom it wished to hire — that is, those who are “ satisfactory to the Employer,” which is the substance of the thought I expressed in my opinion.
The application by the respondent for leave to apply for reargument is denied.