Owen McGivern, J.
The petitioner, the Actors’ Equity Association, seeks to compel the respondent, the League of New York Theatres, Inc., to submit certain differences between them to arbitration as having been so agreed to by written agreement. Previously, a motion to this effect was made at Special Term, New York County, but Mr. Justice Lupiano in a decision, dated July 3, 1959, directed a trial on the sole question as to whether the respondent League had obligated itself ‘ ‘ to arbitrate the petitioner’s demand for pension or retirement benefits ”. After trial, this court thinks not.
The issue turns on the effect to be given the following clause, presently found in the collective bargaining agreement between the parties, dated as of June 1, 1957, and known as section 14 thereof: ‘ ‘ On March 1, 1959, the parties agree to enter into negotiations concerning any proposals by Equity for the expansion of welfare benefits. Said proposals may include the present area of welfare benefits covered in the 1954 agreement, but need not be limited to them.”
And the question is: did the League by this language agree to submit the issue of employee pension and retirement benefits to arbitration?
During the course of negotiations, petitioner Equity had submitted different language to the League, to wit: “ On March 1, 1959, the parties agree to enter into negotiations concerning any proposals by equity [petitioner] for the expansion of welfare benefits. Said proposal may include but need not be limited to hospitalization, medical coverage, life insurance and pensions.”
This language however was changed by the secretary of the League, a Mr. Herman Shumlin, to its present form, initialed by him accordingly, as it was by Equity’s representative, and the agreement itself formally executed by the respective parties, Mr. Shumlin again acting for the League.
In effect, the petitioner’s case rests on the testimony of one of its attorneys that in oral conversation with a Mr. Reilley, the executive director of the League, it was agreed that the change caused by Mr. Shumlin was not intended to preclude bargaining on the subject of pensions. Conceding the good faith of the attorney’s recollection, denied out of hand by Mr. Reilley, its effect must be disallowed. Equity knew since 1954 that the opposition of the League to pensions for theatrical employees was adamant and unyielding, and the reasons therefor were ofttimes given, as reflected in the correspondence between the parties. From the past conduct of the subject by the parties, it is clear that “ pensions ” remained a desideratum “ devoutly *358 to be wished ” by Equity, but firmly rejected by the League. A disputed conversation between an Equity attorney and a League layman, neither one signatory to the basic agreement, is too slender a reed on which to rest such a momentous issue as pensions, fraught as it is with immense financial consequences to the legitimate theatre. Moreover, we are dealing here with a written agreement. On hornbook principles we cannot read into it something which one signatory has already struck out.
Nor do the efforts of petitioner to enlist custom and usage in its behalf help its cause. An analysis of the expert’s testimony indicates that prevailing practice in collective bargaining agreements treats the subject of “ pensions ” as separate and distinct from the area covered by the term ‘ ‘ welfare benefits ’ ’ and that the latter did not customarily include the former. On this issue too, the League had the better of it.
Accordingly, this court finds that the agreement dated as of June 1,1957 did not embrace the subject of “ pensions or retirement benefits ” and the respondent need not be required to arbitrate this question (Matter of Livingston v. Tel-Ant Electronic Co., 4 Misc 2d 600).